IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTEBAN SANTIAGO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 09 C 3137 ) ) Magistrate Judge Nan R. Nolan |
| CITY OF CHICAGO, *et al.* | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Esteban Santiago brings this civil rights action against four Chicago Police Officers and the City of Chicago (the "City"), alleging claims of unreasonable seizure (Count I), excessive force (Count II), failure to intervene (Count III), and a state law indemnification claim against the City (Count IV). This case has been referred to this Court for resolution of Plaintiff's Motion to Compel, which seeks production of three active, open CR files relating to complaints of misconduct made against the police officers who were involved in the incident alleged in Santiago's complaint (Doc. 40). For the reasons stated, the motion is granted in part to the extent described below.

**I.     Background**

Santiago's First Amended Complaint is based on an incident he alleges occurred on or about May 26, 2007. Santiago's complaint contains the following allegations. On or about Saturday, May 26, 2007, at approximately 10:00 p.m., Santiago was sitting with his friends Omar and Adrian in Santiago's truck, which was parked in an alley at or near 2340 South Sacramento Avenue in Chicago. The men had been visiting their friend Ernie and were getting ready to leave when Santiago saw a group of men emerge from between the houses and run toward his vehicle. Santiago became frightened and started to leave the area on foot. Santiago alleges that Defendant Officers Brian Leahy and James McNichols tackled him and threw him to the ground. Santiago further alleges that Officers Leahy and McNichols hit Santiago and asked him where the gun was.

Officers Leahy and McNichols then kneeled on Santiago's back and handcuffed him. Either Officer Leahy or Officer McNichols stepped on Santiago's right leg. The other Defendant Officer had his knee in Santiago's back, pressed down on Santiago's neck, and again asked Santiago where the gun was. Santiago told Officers Leahy and McNichols that he did not know where any gun was. Santiago was then searched. A utility knife, but no contraband or evidence of criminal activity, was found.

After the search of Santiago, either Officer Leahy or Officer McNichols swore at and hit Santiago. Santiago asked Officers Leahy and McNichols to get off of him and to leave him alone. Santiago told Officers Leahy and McNichols that they were only beating him up because they probably had been beaten up in high school. Santiago's comment angered Defendant Officers Leahy and McNichols, and one of the Defendant Officers threatened to cut off Santiago's testicles. This Defendant Officer then grabbed Santiago's leg and used Santiago's box-cutter knife to stab Santiago between his legs. The same Defendant Officer also told Santiago that he was going to cut out the tattoos on Santiago's finger. The Defendant Officer then allegedly cut Santiago's hand between his fingers, while Santiago was handcuffed. The other Defendant Officer continued to stomp on Santiago's leg.

Defendant Officers Andrew Camarillo and Gerardo Perez were present and did not intervene to stop the alleged mistreatment by Officers Leahy and McNichols. Officers Camarillo and Perez picked Santiago up, place him in their squad car, and transported him to the 10th District police station. Santiago received medical treatment for his injuries at the Cook County Jail. Defendants deny many of Santiago's factual allegations and deny that they engaged in any illegal or wrongful conduct.

**II.     Discussion**

Federal Rule of Civil Procedure 26 governs the scope of civil discovery. Pursuant to Rule 26, Plaintiff is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A court can limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). Finally, magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997).

During discovery, Santiago sent written requests for Independent Police Review Authority (IPRA) Complaint Register (CR) files concerning complaints of misconduct made against each Defendant Officer. Defendants agreed to make all CR files which are closed available to Santiago's counsel. After meet and confer efforts, the parties were unable to reach an agreement on the production of three (3) CR files that remain active and open (Nos. 1003683, 1024258, and 1000927). The City contends that the three withheld CR files are protected from disclosure by the law enforcement investigative privilege because their "discovery would undermine the integrity and effectiveness of IPRA's ongoing investigation." (Doc. 65 at 2).

The purpose of the law enforcement privilege is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." Ostrowski v. Holem, 2002 WL 31956039, at *2 (N.D. Ill. Jan. 21, 2002) (quoting Hernandez v. Longini, 1997 WL 754041, at *3 (N.D. Ill. Nov. 13, 1997)). The law enforcement privilege is not absolute; rather it is a qualified privilege under which the need for secrecy must be balanced against the plaintiff's need for access to the information. Lepinka v. The Village of Franklin Park, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004).

In determining whether the law enforcement privilege applies, courts have considered and weighed ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case. Kampien v. Individuals of Chicago Police Department, 2002 WL 238443, at *4 (N.D. Ill. Feb. 19, 2002). The claim for application of the privilege is "somewhat stronger" when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement methods and tactics as contrasted with simple interview materials, and evaluative opinions as contrasted with facts. G-69 v. Degnan, 130 F.R.D. 326, 332 (D. N.J. 1990).

The City has submitted a Declaration of Michael Duffy, the Coordinator of Investigations for the IPRA, asserting a formal claim of privilege over the CR files at issue. IPRA was created in September 2007 as an independent city department, separate from the Chicago Police Department (CPD) to replace the former Office of Professional Standards. Duffy Dec. at ¶ 2. IPRA is responsible for investigating allegations against CPD members of excessive force, domestic violence, coercion through a threat of violence, and verbal bias-based abuse. IPRA also

investigates discharges of firearms and Tasers, and "extraordinary occurrences" in CPD custody, even where there is no allegation of police misconduct. Id.

Mr. Duffy states that he oversees IPRA investigations and has personal knowledge of the investigations in CR File Nos. 1003683, 1024258, and 1000927. Duffy Dec. at ¶ 3. With regard to File No. 1003683, Mr. Duffy explains that it is an open investigation file that is pending internal administrative review to determine whether the investigation is thorough and complete. Id. at ¶ 3. Mr. Duffy says that if further investigation is required, "the integrity of the investigation would be compromised by the disclosure of witness statements, confidential information, and information related to the decision-making deliberative process." Id. Specifically, Mr. Duffy claims that the following categories of documents are privileged: (1) documents and photographs pertaining to medical records, diagnoses, and injuries; (2) documents pertaining to information concerning confidential witnesses and the accused CPD members; and (3) the Face Sheet, vehicular photographs, Investigator's Log, and Summary Report. Id.

Mr. Duffy states that CR File Nos. 1024258 and 1000927 are open investigation files in which the involved police officers have not been interviewed. Duffy Dec. at ¶¶ 6 & 7. Mr. Duffy asserts that the integrity of these two investigations would be compromised by the disclosure of witness statements and "other confidential information." Id. Specifically, Mr. Duffy states that CR File No. 1024258 contains "privileged medical records and information," arrest records which contain personal information, and "[o]ther documents [that] pertain to confidential information concerning witnesses and the potential accused CPD member." Id. With regard to File No. 1000927, Mr. Duffy says the following documents in the file are privileged: (1) documents and photographs pertaining to medical records, diagnoses, and injuries; (2) arrest records which contain personal information; (3) documents pertaining to information concerning confidential witnesses and the accused CPD members; and (4) the Face Sheet, memos regarding photo viewing, and attendance records. Id. at ¶ 7.

The law enforcement investigative privilege is overcome in the instant case by Santiago's need for the information and the City's concerns can be addressed by an appropriate protective order. Santiago has a valid interest in obtaining CR files relating to past complaints of misconduct made against the Defendant Officers. See Vodak v. City of Chicago, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) (holding "disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi."); Lepianka, 2004 WL 626830, at *2. The City has not described the nature of the allegations in the open CR files. The Court can only assume that the City would have challenged the relevancy of the open CR files if the allegations of misconduct were not even remotely similar to those involved here.

The City, on the other hand, has a legitimate interest in preserving the confidentiality of an ongoing IPRA investigation. Bond v. Utreras, 2006 WL 695447, at *7 (N.D. Ill. March 10, 2006) (stating that "ongoing internal police investigations benefit from a degree of confidentiality."). That does not mean, however, that all documents in active CR files are privileged because they were created pursuant to an investigation that is still ongoing. Bond v. Utreras, 2006 WL 1343666, at *2 (N.D. Ill. May 12, 2006) (stating "it is not enough for Defendants to assert that the documents must be protected solely because they relate to an ongoing investigation. There is simply no support in the law for this position."). The City must show how disclosure of specific information would jeopardize or harm the investigation. The only specific harm identified by the City that might result from the disclosure of the three open CR files is that "releas[ing] witness statements, accused statements, records, information, and findings related to open investigations would taint the investigations and risk having said information leaked to witnesses and accused officers who have yet to make their statements." (Doc. 65 at 3). The City's primary concern is therefore that witnesses and the accused officers may access the materials in the CR files while the investigations are ongoing and possibly shape their statements to investigators if they are able to

review the evidence in the files.

The City's interest in ensuring that these active CR files be protected from disclosure to the accused officers and others who have not been interviewed as part of the investigations can be accommodated by an "Attorneys' Eyes Only" protective order under which only counsel of record in this case may review the open CR files and use them only for purposes of this litigation. The City does not contend that limited disclosure of such information to Santiago's counsel would pose a risk to the integrity of the ongoing IPRA investigations. An attorney's eyes only protective order will allow Santiago's counsel to discover potentially relevant information and at the same time, shield witness statements from disclosure to the accused officers and other witnesses who have not yet been interviewed as well as protect the privacy interests of individuals involved in the investigation and the confidentiality of sources and witnesses. Lewis v. City of Chicago, 2004 WL 2608302, at *3 (N.D. Ill. Nov. 16, 2004) (holding "[t]o the extent that the City is concerned that the officer defendants will be able to use knowledge of the witness statements to shape their own statements, that concern can be addressed by treating the information produced as attorneys' eye only material."). There is one caveat appropriate here. The Court believes the IPRA should be able "to assess the evidence, deliberate, and revise preliminary conclusions without fear of premature disclosure." Id., at *3. To prevent premature disclosure of its initial assessments, the IPRA may withhold from its production any preliminary thoughts about or assessments of the investigations.

In the alternative, the City argues that the three open CR investigations "fall within the ambit of recent and material amendments to the Illinois Freedom of Information Act (FOIA) that took effect on January 1, 2010." Section 7(1)(n) of the newly amended FOIA exempts from public disclosure:

> (n) Records relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed.

5 ILCS 140/7(n) (West 2010). The City relies on Bell v. City of Chicago, 2010 WL 753297, at *2

(N.D. Ill. Feb. 26, 2010), in which the court stated that "under the plain language of the newly amended FOIA, CRs are exempted from disclosure." The City contends that this language supports its contention that it may completely withhold production of open CR files. However, the issue in Bell was whether the Illinois FOIA provided good cause for issuing a protective order preventing public disclosure of CR files produced in the course of discovery. This critical distinction renders the City's reliance on Bell unpersuasive.[1] As this Court has previously held and the recent FOIA amendments do not change, "Illinois FOIA exemptions do not create an evidentiary privilege within the meaning of Fed. R. Civ. P. 26(b)(1). The Illinois FOIA governs disclosure to the public in general and is not dispositive of disclosure in response to discovery requests in litigation." Lepianka, 2004 WL 626830, at *2. Thus, information that may be exempt from disclosure to the general public under the Illinois FOIA may be discoverable in civil litigation in the federal courts.

As explained above, the Court finds that good cause exists to limit the disclosure of the three active CR files to Santiago's attorneys. In making this ruling, this Court is aware of recent cases in this district both before and after the 2010 Illinois FOIA amendments which have rejected protective order treatment for CR files, but none of those cases expressly dealt with the issue of whether good cause existed with respect to active CR files. See Macias v. City of Chicago, 09 C 1240 (N.D. Ill. March 10, 2010) (Valdez, M.J.) (defendants' motion to reconsider denial of motion for a protective order (doc. 72) filed on 03/24/10 remains pending) ; Keys v. City of Chicago, 09 C 4162 (N.D. Ill. Dec. 17, 2009) (Leinenweber, J.); Padilla v. City of Chicago, 669 F. Supp.2d 911 (N.D. Ill. Nov. 16, 2009) (Shadur, J.); Fuller v. City of Chicago, 09 C 1672 (N.D. Ill. Nov. 10, 2009) (Hibbler, J.); Goldhamer v. City of Chicago, 2009 WL 3680201 (N.D. Ill. Nov. 2, 2009) (Grady, J.); Alva v. City of Chicago, 08 C 6261 (N.D. Ill. Oct. 8, 2009) (Dow, J.) (defendants' motion for

---

[1] In light of the City's voluntary production of all closed CR files involving complaints against the Defendant Officers, the Court questions whether the City truly believes that Section 7(1)(n) of the newly amended FOIA provides a legal justification for withholding CR files wholesale from the other party in civil litigation.

reconsideration of their motion for entry of a protective order (doc. 49) filed 10/30/09 remains pending); see also Gekas v. Williamson, 912 N.E.2d 347, 356 (Ill. App. 2009) (holding CR files are not exempt from disclosure under Illinois FOIA section 7(1)(b)(ii)).

## III. Conclusion

For these reasons, Plaintiff's motion to compel is granted in part with the understanding that the active CR files will be produced on an attorneys' eyes only basis. This means that the contents of CR File Nos. 1003683, 1024258, and 1000927 will not be shared by Plaintiff's counsel with anyone unless otherwise agreed by counsel in writing or ordered by the Court.

E N T E R:

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: March 26, 2010**